UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY JOHN SAMON,

    Plaintiff,                    Civil Action No. 16-10889
                                      Honorable Nancy G. Edmunds
    v.                          Magistrate Judge Elizabeth A. Stafford

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

    Defendant.
_____/

### REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF. NO. 12, 16]

Plaintiff Jeffrey John Samon appeals a final decision of defendant Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits ("DIB") and Supplemental Security Income Benefits ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions, referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court **RECOMMENDS** that:

- the Commissioner's motion [ECF No. 16] be **GRANTED**;
- Samon's motion [ECF No. 12] be **DENIED**; and
- the Commissioner's decision be **AFFIRMED**, pursuant to sentence

four of 42 U.S.C. § 405(g).

I. **BACKGROUND**

    A. **Samon's Background and Disability Applications**

Born December 30, 1966, Samon was 46 years old when he submitted his applications for disability benefits on April 11, 2013. [ECF No. 7-3, Tr. 94]. He has a high school education, and has past relevant work as a pipe fitter. [*Id.*, Tr. 126]. Samon alleges that he is disabled by "few fingers, back fusion, MERSA in bones, crushed ankle, bipolar disorder [and] high blood pressure," with an onset date of November 30, 2012. [*Id.*, Tr. 93].

After the Commissioner denied both disability applications initially, Samon requested a hearing, which took place on February 3, 2015, and included the testimony of Samon and a vocational expert ("VE"). [ECF No. 7-2, Tr. 34-91]. In a February 10, 2015, written decision, the ALJ found Samon not disabled. [*Id.*, Tr. 19-28]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner, and Samon timely filed for judicial review. [*Id.*, Tr. 1-3; R. 1].

    B. **The ALJ's Application of the Disability Framework Analysis**

DIB and SSI are available for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). A "disability" is the

2

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[1] Second, if the claimant has not had a severe impairment or a combination of such impairments[2] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity, and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the

---

[1] Sections 1520(a)(4) and 920(a)(4), which pertain to DIB and SSI respectively, list the same five-step analysis.
[2] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." § 1520(c); § 920(c).

3

claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Samon was not disabled. At step one, he found that Samon had not engaged in substantial gainful activity since his alleged onset date of November 30, 2012. [ECF No. 7-2, Tr. 21]. At step two, he found that Samon had the severe impairments of "degenerative disc disease of the lumbar spine, status post ankle surgery, MRSA infection related to ankle surgery, status post left hand injury with resultant loss of a finger and other anatomical loss, bipolar disorder, attention deficit hyperactivity disorder (ADHD), and alcohol and tobacco dependency." [*Id.*]. At step three, the ALJ concluded that none of his impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.*, Tr. 23].

Between the third and fourth steps, the ALJ found that Samon had the RFC:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can climb no ladders, ropes, or scaffolds. He can occasionally climb ramps or stairs. The claimant can occasionally balance, stoop, kneel, crouch and crawl. He can occasionally handle and finder of objects with the left upper extremity. The claimant is able to perform simple,

4

routine, and repetitive tasks.

[ECF No. 7-2, Tr. 24]. At step four, the ALJ found that Samon could not perform any past relevant work. [*Id.*, Tr. 26]. With the assistance of VE testimony [*Id.*, Tr. 27], the ALJ determined at step five that based on Samon's age, education, work experience and RFC, he could perform the requirements of representative occupations, such as records clerk, counter clerk and information clerk, and that those jobs existed in significant numbers in the economy, rendering a finding that he was not disabled. [*Id.*, Tr. 27].

## II.   STANDARD OF REVIEW

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining

whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

The Commissioner must also adhere to its own procedures, but failure to do so constitutes only harmless error unless the claimant has been prejudiced or deprived of substantial rights. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009). An ALJ's failure to use an "adjudicatory tool" that does not change the outcome of the decision is harmless. *Id.* at 655-56. On the other hand, substantial errors like ignoring evidence in the record or failing to follow the treating physician rule are not harmless. *Id.*; *Gentry*, 741 F.3d at 723, 729; *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011).

## III. ANALYSIS

Samon argues that the ALJ violated the treating physician rule with respect to the weight given to the opinion of treating physician, Lynn Van Wagnen, M.D. He asserts that, in assigning Dr. Van Wagnen's opinion little weight and assessing his RFC, the ALJ did not sufficiently consider his diagnosis of chronic osteomyelitis. The Court finds that the ALJ provided good reasons for discounting the weight given to Dr. Van Wagnen's opinion and that Samon has not demonstrated that his osteomyelitis is disabling.

6

## A.

Dr. Van Wagnen treated Samon for his various impairments, including hypertension, bipolar disorder, lumbago, anxiety, and his chronic osteomyelitis/MRSA infection in his left ankle. However, the discussion below is primarily focused on Samon's ankle injury and MRSA infection/chronic osteomyelitis, as well as Dr. Van Wagnen's treatment of them, because that is the primary focus of Samon's arguments.

Samon's relevant medical history dates back to when he was 20 years old and had a lawnmower accident, which resulted in him losing two and a half fingers on his right hand. [ECF No. 7-2, at 53-54]. In 2001, he underwent two back surgeries, a discectomy and fusion. [ECF No. 7-7, Tr. 279]. The first record showing Dr. Van Wagnen treating Samon was in January 2012, when Samon injured his shoulder while riding a quad bicycle and received emergency treatment. [*Id.*, Tr. 283-87]. In November 2012, Samon fractured his left ankle while doing yard work at home. [ECF No. 7-2, Tr. 52-53]. He went to the emergency room the following day, and had open reduction surgery on December 4, 2012, that included the installation of stabilizing hardware (an Arthrex Tightrope). [*Id.*, Tr. 22; ECF No. 7-7, Tr. 311].

After continued complaints of pain, Samon was found to have a MRSA infection in his left ankle along with possibly infected hardware. [ECF No. 7-7, Tr. 333, 344]. Samon thereafter received IV antibiotic therapy at home; he claims that that treatment continued until March 2013. [*Id.*, Tr. 320, 325-26, 344, 349; ECF No. 12, PageID 602]. Donna O. O'Nell, M.D., performed an infectious disease consultation in January 2013, and described Samon as having "a terrible problem" and as being in "terrible pain." [ECF No. 7-7, Tr. 350]. She was discouraged with Samon's progress and opined that he would continue to need antibiotics after the four to six weeks initially planned. [*Id.*].

Later in January 2013, Samon was examined and X-rayed by Paul Kenyon, M.D., who was with Jackson Orthopaedics & Sports Medicine. [ECF No. 7-7, Tr. 367]. Dr. Kenyon noted that Samon's ankle looked great and had no significant swelling, and that his complaints of significant pain "certainly don't match his objective findings." [*Id.*]. Dr. Kenyon opined that the only way to eradicate the infection was to remove the hardware. [*Id.*]. Dr. Kenyon removed the hardware the following month. [ECF No. 7-7, Tr. 375]. In March 2013, Dr. Kenyon again examined and X-rayed Samon's ankle, which he described as looking great and without signs of infection. [ECF No. 7-8, Tr. 425]. After further X-rays and another examination in

8

April 2013, Dr. Kenyon stated that the ankle looked fine and there was no drainage, but he had pain "related to his injury and his infection," and was going to try an orthotic in his shoe. [*Id.,* Tr. 427].

Dr. Van Wagnen also examined Samon in April 2013, and Samon reported that he had an odd feeling on the ball of his foot like a sock was wadded under it. [*Id.*, Tr. 468]. But while Dr. Van Wagnen's notes describe her examination of several of Samon's systems, she did not note examining Samon's ankle or gait. [*Id.*]. Dr. Van Wagnen reported in August 2013 that Samon had "gait disturbance," but that he also had a new shoe that was helping him to get around better. [*Id.,* Tr. 464-67]. Dr. Van Wagnen's October 2013 report described left leg pain and listed osteomyelitis of the ankle as one of Samon's chronic conditions, but the musculoskeletal examination described only joint pain and muscle weakness. [*Id.*, Tr. 459-63]. Similarly, while osteomyelitis was listed as a diagnosis during the October 2013, December 2013 and June 2014 examinations, the reports do not indicate that Dr. Van Wagnen examined or treated Samon's ankle at those times. [ECF No. 7-8, Tr. 462; ECF No. 7-9, Tr. 535-38, 543- 44].

In November 2013, Samon was evaluated by Thuy Nguyen, D.O. Dr. Nguyen reported that Samon would take antibiotics for life due to his

MRSA, and had a limited range of motion in his left ankle, but his manual muscle testing revealed strength of 5/5; he showed no muscle atrophy; had a normal gait and station and did not need an assistive device for ambulating; and could bend forward, squat and heel to toe walk without difficulty. [ECF No. 7-9, Tr. 528-32]. Dr. Nguyen found that Samon had lost most of the gross and fine dexterity in his left hand, but that he could carry up to 20 pounds with his right arm, lift about 25 pounds with his right hand, and walk about 450 feet. [*Id.*].

In June 2014, Dr. Van Wagnen completed a "Medical Assessment of Ability to do Work-Related Activities (Physical)" form, where she opined that Samon be given extremely limiting restrictions. [ECF No. 7-9, Tr. 539-42]. She stated that Samon can never sit, stand, or walk during an eight-hour workday; can occasionally lift or carry only five pounds; can occasionally grasp and push ten and twenty pounds; cannot use his feet and legs for repetitive movements such as operations of foot controls; can never bend, twist, reach above shoulder level, squat, kneel, climb stairs or ladders, crawl or stoop. [*Id.*]. She also instructed that Samon avoid unprotected heights; moving machinery; temperature extremes; being outside in cold or wet weather; vibration; and humidity. [*Id.*]. Dr. Van Wagnen listed chronic osteomyelitis left leg, manic depressive disorder,

10

and chronic pain as the factors that supported her conclusions. [*Id.*, Tr. 542].

The ALJ assigned Dr. Van Wagnen's opinion little weight. [ECF No. 7-2, Tr. 2].

### B.

The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions regarding the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence. *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d at 242-43. "Even when not controlling, however, the ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors," and give appropriate weight to the opinion. *Gentry*, 741 F.3d at 723. In all cases, a treating physician's opinion is entitled to great deference. *Id.* An ALJ who decides to give less than controlling weight to a treating physician's opinion must give "good reasons" for doing so, in order to "make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons

11

for that weight." *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)). This procedural safeguard not only permits "meaningful appellate review," but also ensures that claimants "understand the disposition of their cases." *Rogers*, 486 F.2d at 242-43 (internal quotation marks and citation omitted). The Court will "not hesitate to remand" when an ALJ's opinion "do[es] not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion." *Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) (internal quotation marks and citation omitted). In this case, remand is not warranted.

The ALJ gave Dr. Van Wagnen's opinion little weight, reasoning that the "preclusive limitations at a very restricted range of sedentary work," were not supported by "[t]he record as a whole," and specifically citing the Dr. Nguyen's findings that Samon had no difficulty walking, bending, squatting, was able to ambulate without the use of any assistive devices, and that he had muscle strength of 5/5 throughout and his sensation was intact. [ECF No. 7-2, Tr. 25, referring to ECF No. 7-9, Tr. 528-32]. The ALJ further cited Samon's reports that "he was able to drive, mow with a rider mower, shop, clean, attend his son's football games, and go to Florida to help out with his friend's dragster racing team." [ECF No. 7-2, Tr. 25 referring to ECF No. 7-2, Tr. 81, 83; ECF No. 7-8, Tr. 498-99]. The results

12

of Dr. Nguyen's evaluation and Samon's descriptions of his activities constitute good reasons for giving little weight to Dr. Van Wagner's opinion that Samon could never sit, stand, walk, bend, twist, reach above shoulder level, squat, kneel, climb stairs or ladders, crawl or stoop. Indeed, the evidence cited by the ALJ belies that Samon is as limited as Dr. Van Wagnen indicated.

Samon cites generic descriptions of chronic osteomyelitis in an effort to demonstrate that Dr. Van Wagner's limitations were warranted and that the ALJ's RFC was insufficient. [ECF No. 12, PgID 608-09]. In advancing this argument, Samon conflates a diagnosis with functionality; a diagnosis says nothing about its disabling effects. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). In an attempt to demonstrate that his osteomyelitis is disabling, Samon cites an August 2013 report as indicating that he "was still experiencing night sweats; chills; fatigue; and fever"; however, those symptoms were in the "negative" column on the cited page. [ECF No. 12, PageID 609, citing ECF No. 7-8, Tr. 465]. Samon also relies on Dr. Nguyen's determination that he had limited flexibility in his right ankle, [ECF No. 12, PageID 609, citing ECF No. 7-9, Tr. 530], but he does not show that that limited flexibility renders the ALJ's assessment of his RFC insufficient.

Lastly, in a conclusory manner, Samon argues that the combination of his severe impairments should be considered in toto.  [ECF No. 12, PageID 604].  But he does not demonstrate that the functional limitations that arise from his severe impairments require a more restrictive RFC, and that is his burden.  *Preslar*, 14 F.3d at 1110.  The ALJ's assessment of Samon's RFC should therefore be affirmed.

### III.   CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that the Commissioner's motion [ECF No. 16] be **GRANTED**; that Samon's motion [ECF No. 12] be **DENIED**; and that the Commissioner's decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

s/Elizabeth A. Stafford<br>
ELIZABETH A. STAFFORD<br>
United States Magistrate Judge

Dated: January 17, 2017

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v.*

*Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 17, 2017.

                                        s/Marlena Williams
                                        MARLENA WILLIAMS
                                        Case Manager